**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| NEUMENTUM, INC.,<br><br>                 Plaintiff,<br>vs.<br><br>J. TAGGART MCGURRIN<br><br>             Defendant. | **ECF Case – Electronically Filed**<br><br>**Civil Action No.: 24-cv-06395-JKS-LDW** |

**DEFENDANT J. TAGGART MCGURRIN'S MEMORANDUM OF LAW
SUBMITTED IN SUPPORT OF HIS MOTION SEEKING AN ORDER:
(1) DISMISSING WITH PREJUDICE PLAINTIFF'S STORED COMMUNICATIONS
ACT CAUSE OF ACTION FOR FAILURE TO STATE A CLAIM PURSUANT
TO FRCP RULE 12(b)(6); (2) DISMISSING THE REMAINING NEW JERSEY STATE
LAW CLAIMS ALLEGED IN THE COMPLAINT PURSUANT TO 28 U.S.C. § 1367(c)
FOR LACK OF SUBJECT MATTER JURISDICTION; AND/OR (3) REMANDING THE
CASE PURSUANT TO 28 U.S.C.A § 1447(c)**

**PECKAR & ABRAMSON, P.C.**
Attorneys for Defendant
*J. Taggart McGurrin*
70 Grand Avenue
River Edge, New Jersey 07661
(201) 343-3434

On the Brief:

*Aaron C. Schlesinger, Esq.*
*Kevin J. O'Connor, Esq.*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF PERTINENT FACTS ALLEGED IN NEUMENTUM'S
COMPLAINT .............................................................................................................4

     A.    Background Information...............................................................................4

     B.    JTM was Provided Global Administrative Access to Neumentum's
         Entire Computer Network in 2021 .............................................................5

     C.    Facts as Alleged in the Complaint Regarding JTM's Access to
         Neumentum's Computer Network During the Time Period January
         19, 2024 to February 16, 2024 When He Still Possessed Global
         Administrative Access ................................................................................6

     D.    Neumentum Revokes JTM's Administrative Access Effective
         February 28, 2024 ......................................................................................7

     E.    Neumentum Terminates JTM's Employment .............................................7

     F.    The Only Federal Law Cause of Action Alleged in Neumentum's
         Complaint ...................................................................................................7

     G.    The New Jersey State Law Causes of Actions Alleged in
         Neumentum's Complaint............................................................................7

STATEMENT OF FACTS RELATING TO JTM'S NEW JERSEY SUPERIOR COURT
ACTION .....................................................................................................................8

ARGUMENT ..............................................................................................................9

POINT I ......................................................................................................................9
     STANDARD OF REVIEW ON A MOTION TO DISMISS PURSUANT TO
     RULE 12(B)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE.........................9

POINT II ...................................................................................................................10
     NEUMENTUM FAILS TO STATE A VIABLE STORED
     COMMUNICATIONS ACT, 18 U.S.C. § 2701, CLAIM.................................10

     A.    The Electronic Communications Service Provider Authorized User
         Exemption.................................................................................................11

     B.    The Already Read Emails Allegedly Observed by JTM are not
         Communications in Electronic Storage as Required by the SCA..............15

POINT III..................................................................................................................17
     IF NEUMENTUM'S SCA CLAIM IS DISMISSED, THIS COURT SHOULD
     DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER ITS
     STATE LAW CAUSES OF ACTIONS PURSUANT TO 28 U.S.C. § 1367(C) ..............17

**TABLE OF CONTENTS**

Page

POINT IV ....................................................................................................................18

NEUMENTUM'S CASE IS SUBJECT TO REMAND PURSUANT TO 28
U.S.C.A. § 1447(C) ........................................................................................18

CONCLUSION............................................................................................................19

## TABLE OF AUTHORITIES

<u>**Page(s)**</u>

**Federal Cases**

<u>Aschcroft v. Iqbal</u>,
    556 U.S. 662 (2009)...................................................................................................9, 10

<u>Bansal v. Russ</u>,
    513 F.Supp.2d 264 (E.D. Pa. 2007)................................................................................15, 16

<u>Bell Atl. Corp. v. Twombly</u>,
    550 U.S. 544 (2007)...................................................................................................9, 10

<u>Bohach v. City of Reno</u>,
    932 F.Supp. 1232 (D.Nev.1996).....................................................................................12

<u>Borough of West Mifflin v. Lancaster</u>,
    45 F.3d 760 (3d Cir. 1995) ...........................................................................................17

<u>Bromwell v. Michigan Mutual Insurance Company</u>,
    115 F.3d 208 Cir. 1997 ................................................................................................18

<u>Cent. Bank & Tr. v. Smith</u>,
    215 F. Supp. 3d 1226 (D. Wyo. 2016)...........................................................................12

<u>Cloudpath Networks, Inc. v. SecureW2 B.V.</u>,
    157 F. Supp. 3d 961 (D. Colo. 2016)..............................................................................12

<u>In re DoubleClick, Inc. Privacy Litig.</u>,
    154 F.Supp.2d 497 (S.D.N.Y. 2001) ..............................................................................15

<u>Ehling v. Monmouth-Ocean Hospital Service Corp.</u>,
    961 F.Supp.2d 659 (D.N.J. 2013)...................................................................................11

<u>Evancho v. Fisher</u>,
    423 F.3d 347 (3d Cir. 2005) ...........................................................................................9

<u>Fowler v. UPMC Shadyside</u>,
    578 F.3d 203 (3d Cir. 2009) ........................................................................................9, 10

<u>Fraser v. Nationwide Mut. Ins. Co.</u>,
    352 F.3d 107 (3d Cir. 2004) .......................................................................................11, 15

<u>Freedom Calls Foundation v. Bukstel</u>,
    2006 W.L. 845509 (E.D.N.Y. 2006) ..............................................................................12

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

Garcia v. City of Laredo Tex.,
   702 F.3d 788 (5th Cir. 2012) ...............................................................................10, 11

In re Google Inc. Cookie Placement Consumer Privacy Litigation,
   806 F.3d 125 (3d Cir. 2015) ...............................................................................10, 11

Hedges v. Musco,
   204 F.3d 109 (3d Cir. 2000) ......................................................................................17

Hedges v. United States,
   440 F.3d 744 (3d Cir. 2005) ......................................................................................10

Hilderman v. Enea TekSci, Inc.,
   551 F.Supp.2d 1183 (S.D.Cal. 2008)........................................................................16

International Primate Protection League v. Administrators of Tulane Educ. Fund,
   500 U.S. 72 (1991)......................................................................................................18

Lazette v. Kulmatycki,
   949 F.Supp.2d 748 (N.D. Ohio 2013) .......................................................................15

McGurrin v. Neumentum, Inc. and Joseph V. Pergolizzi,
   Docket No. MRS-L-001052 ................................................................................*passim*

Phillips v. Cnty. Of Allegheny,
   515 F.3d 224 (2d Cir. 2008) ....................................................................................9, 10

Pietrylo v. Hillstone Rest. Grp. No. 06-5754,
   2009 WL 3128420 (D.N.J. 2009) ..............................................................................11

Scherer v. Rhodes,
   416 U.S. 232 (1974)......................................................................................................9

Sherman & Co. v. Salton Maxim Housewares, Inc.,
   94 F. Supp. 2d 817 (E.D. Mich. 2000) ......................................................................12

TLS Mgmt. v. Rodriguez-Toledo,
   260 F. Supp. 3d 154 (D.P.R. 2016) ...........................................................................12

United States v. Weaver,
   636 F.Supp.2d 769 (C.D. Ill. 2009) ......................................................................15, 16

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

Walker v. Coffey,
  956 F.3d 163 (3d Cir. 2020) ...........................................................12, 15

**State Cases**

Jennings v. Jennings,
  401, 401 S.C. 1, 736 S.E.2d 242 (2012) ...............................................16

**Federal Statutes**

Stored Communications Act, 18 U.S.C. § 2701 et seq...........................................*passim*

18 U.S.C. § 2703(a) ...................................................................4, 10, 15

28 U.S.C. 1367(c) ...........................................................1, 3, 4, 17, 19

28 U.S.C. § 1367(c)(3) ................................................................17

28 U.S.C.A § 1447(c) ......................................................1, 3, 4, 18, 19

28 U.S.C. § 2510(13) ...................................................................11

28 U.S.C. § 2510(17) ................................................................11, 15

28 U.S.C. § 2510(17)(B) ...............................................................16

**Federal Rules of Civil Procedure**

Federal Rules of Civil Procedure Rule 8(a)(2) ..............................................9

Federal Rules of Civil Procedure Rule 12(b)(6) .............................................1, 3, 9, 19

**State Statutes**

New Jersey Computer Related Offenses Act, N.J.S.A. 2A:38A-3...............................3, 7

New Jersey Conscientious Employee Protection Act.....................................2, 8

Defendant J. Taggart McGurrin ("JTM") respectfully submits this Memorandum of Law in support of his motion seeking an Order: (1) dismissing with prejudice Plaintiff Neumentum Inc.'s ("Neumentum") Stored Communications Act cause of action, 18 U.S.C. § 2701 et. seq. ("SCA"), for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"); (2) dismissing the remaining New Jersey State law claims alleged in the Complaint pursuant to 28 U.S.C. § 1367(c) for lack of subject matter jurisdiction; and/or (3) remanding the case pursuant to 28 U.S.C.A § 1447(c) to the State Court Action filed by JTM in the Superior Court of New Jersey, Morris County, Law Division, case McGurrin v. Neumentum, Inc. and Joseph V. Pergolizzi, Docket No. MRS-L-001052.[1]

## PRELIMINARY STATEMENT

In or about March 2017 JTM was employed by Neumentum, a development stage pharmaceutical company, as its Director of Finance and Business Development. As a result of successfully taking on increased duties and responsibilities, effective January 1, 2022, Neumentum promoted JTM as its Chief Business Officer ("CBO").  As part of the promotion, Neumentum and JTM entered into an Executive Agreement which set forth the terms and conditions of JTM's employment as CBO as well as his separation and potential monetary incentives subject to the terms of his separation.  Importantly, as CBO, in 2021, Neumentum designated JTM as the Global Administrator of its computer network which provided him with unfettered authorized access to its entire computer network. As Administrator, JTM allegedly reviewed emails of other employees of Neumentum that were not directed or provided to him for review. While doing so, JTM noticed numerous violations committed by Neumentum's Chief Executive Officer ("CEO"), Dr. Joseph

---

[1] All Exhibits cited herein refer to the Exhibits annexed to the Declaration of Aaron C. Schlesinger, Esq. submitted in support of JTM's motion.

V. Pergolizzi ("Pergolizzi"). On March 4, 2024, JTM, at a Board meeting, disclosed the violations that he discovered were committed by Pergolizzi and other Neumentum personnel. Upon being provided with such notice, Neumentum and Pergolizzi immediately terminated JTM's employment effective March 6, 2024 and failed to pay any of the monetary incentives owed.

As stated in Neumentum's Complaint, on May 20, 2024, counsel to JTM, for settlement purposes only, provided it with a draft Complaint alleging that his termination violated the Conscientious Employee Protection Act and the Executive Agreement. (See Exhibit "A" at par. 5).

On May 31, 2024, JTM filed his Complaint in the Superior Court of New Jersey, Morris County, Law Division, in the case McGurrin v. Neumentum, Inc. and Joseph V. Pergolizzi, Docket No. MRS-L-001052. (See Exhibit "B"). Neumentum was served with JTM's Complaint on May 31, 2024. (See Exhibit "C"). The Complaint contains the following causes of actions alleging violations against Neumentum and Pergolizzi relating to his termination of employment:

1. Conscientious Employee Protection Act (Count I);

2. Wrongful Termination Under Common Law (Count II);

3. Individual Liability Against Pergolizzi Pursuant to the Conscientious Employee Protection Act (Count III);

4. Tortious Interference with Contract Against Pergolizzi; (Count IV); and

5. Breach of Contract (Count V).

(See Exhibit "B").

On June 5, 2024, JTM was unexpectedly served with Neumentum's Complaint. A review of this Court's Docket shows that the Complaint was filed herein on May 23, 2024. The Complaint alleges the following causes of actions:

1. Declaratory Judgment (First Count);

2.      Breach of Contract (Confidentiality)(Second Count);

3.      Breach of Contract (Non-Disparagement)(Third Count);

4.      Stored Communications Act (Fourth Count);

5.      New Jersey Computer Related Offenses Act, N.J.S.A. 2A:38A-3 (Fifth Count);

6.      Tortious Interference with Economic Advantage (Sixth Count); and

7.      Breach of Fiduciary Duty (Seventh Count).

(See Exhibit "A"). It is evident based on the wording in its Complaint with numerous references to JTM's draft Complaint, which sent for settlement purposes, that Neumentum filed its Complaint in response to receiving JTM's draft complaint. (See Exhibit "A" at pars. 5 and 69-77).[2]

As discussed more fully below, for the following reasons, an Order should be entered by this Court: (1) dismissing with prejudice Neumentum's SCA cause of action, for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"); (2) dismissing the remaining New Jersey state law claims alleged in the Complaint pursuant to 28 U.S.C. § 1367(c) for lack of subject matter jurisdiction; and/or (3) remanding the case pursuant to 28 U.S.C.A § 1447(c) to the State Court Action filed by JTM in the Superior Court of New Jersey,

---

[2] It should be noted that on May 20, 2024, that JTM provided Neumentum's counsel with its draft complaint for settlement purposes only pursuant to Rule 408 of the Federal Rules of Evidence and any similar New Jersey State rule addressing settlement communications. Consistent with the foregoing, the letter sent to Neumentum's counsel with the draft complaint expressly stated in bold **"CONFIDENTIAL FOR SETTLEMENT PURPOSES ONLY."** The draft complaint was never filed with a court or disclosed to a third-party. It is JTM's position that Neumentum and its counsel's act of referencing and quoting provisions of the draft complaint may be in violation of Rule 408, any applicable similar New Jersey State Rule and/or any other applicable rule or code. At the very least, all allegations contained in Neumentum's Complaint referencing the draft complaint are inadmissible. JTM reserves his right to take action regarding the foregoing at the appropriate time.

Morris County, Law Division, case <u>McGurrin v. Neumentum, Inc. and Joseph V. Pergolizzi</u>,

Docket No. MRS-L-001052:

1.  JTM's status as Neumentum's Global Administrator renders him exempt from Neumentum's SCA claim because he was designated as Neumentum's electronic communications service provider authorized to engage in the review of all emails contained in Neumentum's entire computer network including but not limited to the emails as issue;

2.  The already read emails that JTM allegedly observed are not communications in electronic storage as required by 18 U.S.C. §§ 2701(a), 2703(a) and required to allege a viable SCA cause of action;

3.  If Neumentum's SCA cause of action is dismissed, this Court should decline to exercise supplemental jurisdiction over its remaining New Jersey State law claims pursuant to 28 U.S.C. § 1367(c); and

4.  If Neumentum's SCA cause of action is dismissed, Neumentum's remaining New Jersey State law claims should be remanded to, and consolidated with, JTM's New Jersey Superior Court action pursuant to 28 U.S.C.A § 1447(c). [3]

### STATEMENT OF PERTINENT FACTS
### ALLEGED IN NEUMENTUM'S COMPLAINT

**A.   Background Information**

Neumentum is a development stage pharmaceutical company that aims to develop non-opioid pain management treatments.  (See Exhibit "A" at par. 16).  JTM was hired by Neumentum in March 2017 as its Director of Finance and Business Development. (See Exhibit "A").  Between 2019 and 2022, McGurrin took on increased duties and responsibilities, including the Chief Business Officer ("CBO") role.   (See Exhibit "A" at par. 20).   McGurrin entered into an

---

[3] It should be noted that it is JTM's position that all of the other causes of actions alleged against him by Neumentum are baseless and intends to address the validity of those claims in New Jersey Superior Court should this case be dismissed and/or remanded. Moreover, by filing the instant motion, JTM in no way waives his rights to contest those causes of actions at the applicable place and time.

employment agreement with Neumentum, dated January 1, 2022 ("Employment Agreement"), when he became the CBO. (See Exhibit "A" par. 21 and Employment Agreement annexed to Exhibit "A"). The Employment Agreement set forth McGurrin's duties as CBO, which included "overseeing business development activities and transactions, finance, accounting, legal, and general operations at the Company." (See Exhibit "A" at par. 22).

**B.     JTM was Provided Global Administrative Access to Neumentum's Entire Computer Network in 2021**

Neumentum uses two storage platforms: Dropbox, for corporate files, and Google Workspace, for emails. (See Exhibit "A" at par. 31). The storage platforms can only be accessed in full by the "global administrator" in possession of administrative access. (See Exhibit "A" at par. 32).

At the end of 2021, Neumentum's now-former CEO, Scott Shively ("Shively"), resigned following a dispute with the Board. (See Exhibit "A" at par. 33). Before his resignation, Shively and an external information technology ("IT") professional, Mark Kociscin ("Kociscin"), were the only individuals with administrative access. (See Exhibit "A" at par. 33). Kociscin provided full Global Administrative Access to McGurrin sometime in 2021. (See Exhibit "A" at par. 34).

It was not until the fall of 2023 that Neumentum's CEO Dr. Pergolizzi learned McGurrin had administrative access. (See Exhibit "A" at par. 37). At the direction of the Board, Dr. Pergolizzi immediately began searching for an IT professional for Neumentum, as the Board felt it was improper for a senior executive of the company to have direct oversight of Neumentum's IT systems. (See Exhibit "A" at par. 37). In November of 2023, at the direction of the Board, Dr. Pergolizzi asked for McGurrin to share administrative access, believing that administrative access should not be in the hands of only one individual who was not even an IT professional. (See Exhibit "A" at par. 32).

Effective January 1, 2024, Neumentum retained Bryan Garnham ("Garnham"), a self-employed independent professional, as an IT consultant. Garnham was to take responsibility for managing Neumentum's IT systems and providing any necessary IT services. (See Exhibit "A" at par. 40).

**C.      Facts as Alleged in the Complaint Regarding JTM's Access to Neumentum's Computer Network During the Time Period January 19, 2024 to February 16, 2024 When He Still Possessed Global Administrative Access**

Neumentum discovered in February 2024 that McGurrin was accessing CEO and Board Member Dr. Pergolizzi's email account and reading his emails without permission many times every day, for an unknown period that lasted at least several weeks. (See Exhibit "A" at par. 30). This was discovered and revealed to Neumentum shortly before McGurrin's employment at Neumentum ended. (See Exhibit "A" at par. 30).

On February 17, 2024, Garnham discovered someone using McGurrin's account and accessing Dr. Pergolizzi's email account many times every day, starting at least on January 19, 2024. (See Exhibit "A" at par. 44). Garnham continued to monitor the McGurrin activity in Dr. Pergolizzi's email account. (See Exhibit "A" at par. 45).

McGurrin, unaware he was being observed, continued accessing and viewing Dr. Pergolizzi's emails every single day, sometimes dozens of times per day. (See Exhibit "A" at par. 46).

On March 4, 2024, Garnham discovered the McGurrin account had performed a "user takeout" of itself on February 16, 2024, which is the same day McGurrin shared administrative access with Garnham. (See Exhibit "A" at par. 47). A "user takeout" involves downloading and exporting all emails, contacts, and calendar data from an individual account. (See Exhibit "A" at par. 47).

The [electronic mail] screenshots at issue indicate that McGurrin obtained them through his <u>Administrator</u> <u>Access</u> <u>Rights</u>. (See Exhibit "A" at par. 75). That is because the "system labels" field on each screenshot only appears when viewing an email through <u>Administrator</u> <u>Access</u> <u>Rights</u>. (See Exhibit "A" at par. 73).

**D.      Neumentum Revokes JTM's Administrative Access Effective February 28, 2024**

At the direction of the Board, this activity continued until Dr. Pergolizzi asked Garnham to revoke McGurrin's administrative privileges on February 28, 2024. <u>Id.</u>

**E.      Neumentum Terminates JTM's Employment**

Neumentum Terminated JTM's employment effective March 6, 2024.  (See Exhibit "A" at par. 65).

**F.      The Only Federal Law Cause of Action Alleged in Neumentum's Complaint**

The only Federal Law Cause of Action alleged in Neumentum's Complaint is brought pursuant to the SCA. (See Exhibit "A" at par. 97).

**G.      The New Jersey State Law Causes of Actions Alleged in Neumentum's Complaint**

Neumentum alleges the following New Jersey State Law Causes of Actions in its Complaint:

1.      Declaratory Judgment (First Count);

2.      Breach of Contract (Confidentiality)(Second Count);

3.      Breach of Contract (Non-Disparagement)(Third Count);

4.      New Jersey Computer Related Offenses Act, N.J.S.A. 2A:38A-3 (Fifth Count);

5.      Tortious Interference with Economic Advantage (Sixth Count); and

6.      Breach of Fiduciary Duty (Seventh Count).

(See Exhibit "A" at pars. 78-96 and 103-117).

## STATEMENT OF FACTS RELATING TO
## JTM'S NEW JERSEY SUPERIOR COURT ACTION

On May 31, 2024, JTM filed his Complaint in the Superior Court of New Jersey, Morris

County, Law Division, in the case <u>McGurrin v. Neumentum, Inc. and Joseph V. Pergolizzi</u>, Docket

No. MRS-L-001052 (See Exhibit "B"). The Complaint contains the following causes of actions

alleging violations against Neumentum and Pergolizzi relating to his termination of employment:

1.    Conscientious Employee Protection Act (Count I);

2.    Wrongful Termination Under Common Law (Count II);

3.    Individual Liability Against Pergolizzi Pursuant to the Conscientious Employee Protection Act (Count III);

4.    Tortious Interference with Contract Against Pergolizzi; (Count IV); and

5.    Breach of Contract (Count V).

(See Exhibit "B").

## ARGUMENT

## POINT I

## STANDARD OF REVIEW ON A MOTION TO DISMISS PURSUANT TO RULE 12(B)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a motion under Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the pleader. Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005); see also Phillips v. Cnty. Of Allegheny, 515 F.3d 224, 228 (2d Cir. 2008) ("[I]n deciding a motion under Fed. R. Civ. P. 12(b)(6), [a district court is] ... required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to" the plaintiff). A pleading is sufficient if it contains a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When weighing a motion to dismiss, the Court does not ask "whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims[.]'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 562 n. 8 (2007)(quoting Scherer v. Rhodes, 416 U.S. 232, 236 (1974)); see also Aschcroft v. Iqbal, 556 U.S. 662, 684 (2009)("Our decision in Twombly expounded the pleading standard for 'all civil actions.'").

In applying the Twombly/Iqbal standard, a district court will first "accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusion." Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009)(quoting Iqbal, 556 U.S. at 678). Next, the Court will "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Id. at 211 (quoting Iqbal, 556 U.S. at 679). To meet this standard,

a "complaint must do more than allege the plaintiff's entitlement to relief." Id.; see also Phillips, 515 F.3d at 234 ("The Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element.")(citing Twombly, 550 U.S. at 566) The party moving to dismiss under 12(b)(6) "bears the burden of showing that no claim has been presented." Hedges v. United States, 440 F.3d 744, 750 (3d Cir. 2005).

## POINT II

### NEUMENTUM FAILS TO STATE A VIABLE STORED COMMUNICATIONS ACT, 18 U.S.C. § 2701, CLAIM

As discussed more fully below, for the following reasons, Neumentum's SCA cause of action fails to state a claim: (1) JTM's status as Neumentum's Global Administrator renders him exempt from Neumentum's SCA claim because he was Neumentum's designated electronic communications service provider authorized to engage in the review of all emails contained in Neumentum's entire computer network including but not limited to the emails as issue; and (2) the already read emails that JTM allegedly observed are not communications in electronic storage as required by 18 U.S.C. §§ 2701(a), 2703(a) and required to allege a viable SCA cause of action.

Passed in 1986, the Stored Communications Act aims to prevent "potential intrusions on individual privacy arising from illicit access to 'stored communications in remote computing operations and large data banks that stored emails.'" In re Google Inc. Cookie Placement Consumer Privacy Litigation, 806 F.3d 125, 145 (3d Cir. 2015) (quoting Garcia v. City of Laredo, Tex., 702 F.3d 788, 791 (5th Cir. 2012). A person violates the SCA whenever he or she: "(1) intentionally accesses without authorization a facility through which an electronic communication

service is provided; or (2) intentionally exceeds an authorization to access that facility; and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system." Id. (quoting 18 U.S.C. § 2701(a)). The statute defines "electronic storage" as "(A) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and (B) any storage of such communication by an electronic communication service for purposes of backup protection of such communication" 28 U.S.C. § 2510(17).

Personal computing devices are not protected by the SCA. In re Google Inc., 806 F.3d at 153. Moreover, the SCA does not cover communications made through an electronic communication system that is configured so that such electronic communication is readily accessible to the general public." Ehling v. Monmouth-Ocean Hospital Service Corp., 961 F.Supp.2d 659, 667 (D.N.J. 2013) citing 18 U.S.C. § 2511(2)(g)(i).

A "user" is "any person or entity who (A) uses an electronic communications service; and (B) is duly authorized by the provider of such service to engage in such use." 81 U.S.C. § 2510(13).

## A.     The Electronic Communications Service Provider Authorized User Exemption

The SCA "does not apply with respect to conduct authorized: (1) by the person or entity providing a wire or electronic communications service; or (2) by a user of that service with respect to a communication of or intended for that user." Id. at 669 (quoting 18 U.S.C. § 2701(c)); see also Pietrylo v. Hillstone Rest. Grp. No. 06-5754, 2009 WL 3128420, at *2 (D.N.J. 2009). Employers and/or their designated administrators who provide their employees with "the ability to send or receive electronic communications" are "person[s] or entit[ies] providing a wire or electronic communications service" for purposes of the exemption set forth in 18 U.S.C. § 2701(c). See, e.g., Fraser v. Nationwide Mut. Ins. Co., 352 F.3d 107, 113 n. 6 (3d Cir. 2004) (insurance company which acted as administrator of e-mail system for its agents was a provider was exempt from

application of the SCA); Freedom Calls Foundation v. Bukstel, 2006 W.L. 845509, at *27 (E.D.N.Y. 2006) (foundation a provider of service); Bohach v. City of Reno, 932 F.Supp. 1232, 1237 (D.Nev.1996)(city is the provider of electronic communications service to police department since police department's terminals, computer and software enable them to send or receive electronic communications); Walker v. Coffey, 956 F.3d 163, 169 (3d Cir. 2020) (holding Penn State was excepted from liability under the SCA as a service provider for its search of its own server for its employee's emails).

Notably, there exists no violation of the SCA if the information is accessed with authorization, regardless of the defendant's motivation. Sherman & Co. v. Salton Maxim Housewares, Inc., 94 F. Supp. 2d 817, 821 (E.D. Mich. 2000) (holding that "[b]ecause section 2701 of the ECPA prohibits only unauthorized access and not the misappropriation or disclosure of information, there is no violation of section 2701 for a person with authorized access to the database no matter how malicious or larcenous his intended use of that access"); TLS Mgmt. v. Rodriguez-Toledo, 260 F. Supp. 3d 154, 162–63 (D.P.R. 2016) (finding that allegations relating to misuse of confidential information were inadequate to state a claim under the SCA because it only prohibits unauthorized access, not the misappropriation of information); Cent. Bank & Tr. v. Smith, 215 F. Supp. 3d 1226, 1236 (D. Wyo. 2016) (finding no violation of the SCA where defendant had authorization to access the particular information and that "allegations of a deceitful and dishonest purpose [were] not sufficient to state a cause of action"); Cloudpath Networks, Inc. v. SecureW2 B.V., 157 F. Supp. 3d 961, 987 (D. Colo. 2016) (dismissing plaintiff's SCA claim where defendants had authorized access, even if it was misused).

The following alleged facts show that Neumentum's SCA claim lacks viability pursuant to the above exemptions based on JTM's status as Neumentum's Administrator since 2021 because

he was Neumentum's designated electronic communications service provider authorized to engage in the review of all emails contained in Neumentum's entire computer network including but not limited to the emails as issue:

1. Neumentum uses two storage platforms: Dropbox, for corporate files, and Google Workspace, for emails. (See Exhibit "A" at par. 31). The storage platforms can only be accessed in full by the "global administrator" in possession of administrative access. (See Exhibit "A" at par. 32);

2. At the end of 2021, Neumentum's now-former CEO, Shively, resigned following a dispute with the Board. Before his resignation, Shively and an external information technology ("IT") professional, Kociscin, were the only individuals with administrative access. (See Exhibit "A" at par. 33). Kociscin provided administrative access to McGurrin sometime in 2021. (See Exhibit "A" at par. 34);

3. It was not until the fall of 2023 that CEO Dr. Pergolizzi learned McGurrin had administrative access. (See Exhibit "A" at par. 37). At the direction of the Board, Dr. Pergolizzi immediately began searching for an IT professional for Neumentum, as the Board felt it was improper for a senior executive of the company to have direct oversight of Neumentum's IT systems. (See Exhibit "A" at par. 37); and

4. In November of 2023, Dr. Pergolizzi asked for McGurrin to share administrative access, believing administrative access should not be in the hands of only one individual who was not even an IT professional. (See Exhibit "A" at par. 38);

In addition, the following alleged facts show that JTM's access to Neumentum's electronic mails which were allegedly in violation of the SCA took place from January of 2024 to February 16, 2024 when JTM performed a "user takeout," and during that time period, JTM as Global Administrator, acted as Neumentum's electronic communications service provider and possessed Global Administrative Access to Neumentum's entire computer network:

1. Neumentum discovered on February 17, 2024, shortly before McGurrin's employment at Neumentum ended, that McGurrin was accessing Dr. Pergolizzi's email account and reading his emails without permission many times every day, starting on at least January 19, 2024. (See Exhibit "A" at par. 30 and 44);

2. Garnham then continued to monitor the McGurrin activity in Dr. Pergolizzi's email account. (See Exhibit "A" at par. 45);

3.   McGurrin, unaware he was being observed, continued accessing and viewing Dr. Pergolizzi's emails every single day, sometimes dozens of times per day. (See Exhibit "A" at par. 46);

4.   On March 4, 2024, Garnham discovered the McGurrin account had performed a "user takeout" of itself on February 16, 2024, which is the same day McGurrin shared administrative access with Garnham. (See Exhibit "A" at par. 47).   A "user takeout" involves downloading and exporting all emails, contacts, and calendar data from an individual account. (See Exhibit "A" at par. 47);

5.   The [electronic mail] screenshots at issue in the Complaint indicate that McGurrin obtained them through his <u>Administrator Access Rights</u>. (See Exhibit "A" at par. 75); and

6.   That is because the "system labels" field on each screenshot only appears when viewing an email through <u>Administrator Access Rights</u>. (See Exhibit "A" at par. 75).

Finally, the following alleged fact shows that JTM's Global Administrative Access was not revoked until after his alleged acts in violation of the SCA took place.

1.   McGurrin's activities continued until Dr. Pergolizzi asked Garnham to revoke McGurrin's Administrative Privileges on February 28, 2024. (See Exhibit "A" at par. 46).

The foregoing facts are fatal to Neumentum's SCA Cause of Action because all the alleged wrongful reviews of the emails at issue by JTM took place at a time when JTM was Neumentum's Global Administrator thereby rendering him Neumentum's designated electronic communications service provider authorized to engage in the review of all emails contained in Neumentum's entire computer network including but not limited to the emails as issue. Consequently, for this additional reason, Neumentum's SCA Cause of Action is subject to dismissal for failure to state a claim.

**B.      The Already Read Emails Allegedly Observed by JTM are not Communications in Electronic Storage as Required by the SCA**

Importantly, as stated above, the SCA applies only to communications "in electronic storage[.]" Walker v. Coffey, 956 F.3d 163, 171 n. 1 (3d Cir. 2020) (quoting 18 U.S.C. §§ 2701(a), 2703(a)). "Electronic storage" is a term of art under the SCA. Id. A message can be in electronic storage in one of two ways – the "temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof[,]" or the "storage of such communication by an electronic communication service for purposes of backup protection of such communication[.]" Id. (quoting 18 U.S.C. § 2510(17)). The Third Circuit has held that e-mails, once they have been read by the recipient, are no longer in temporary, intermediate storage. Id. citing Fraser, 352 F.3d at 114 (holding that e-mails stored on a server were no longer in temporary, intermediate storage after they had been read by the recipient). Thus, the only way an email could be held to be in electronic storage is if they were being stored "for purposes of backup protection[.]" Id. (quoting 18 U.S.C. § 2510(17)). Versions of already-read emails that are left on a service provider's server do not qualify as being stored for backup protection. Id. citing Lazette v. Kulmatycki, 949 F.Supp.2d 748, 758 & n.13 (N.D. Ohio 2013)(concluding opened e-mails are not in storage for backup protection); Id. citing United States v. Weaver, 636 F.Supp.2d 769, 771-73 (C.D. Ill. 2009)(rejecting reasoning that opened emails on a service provider's server are covered by the SCA); Id. citing Bansal v. Russ, 513 F.Supp.2d 264, 276 (E.D. Pa. 2007)(holding that accessing opened e-mail did not violate the SCA). Consistent with the foregoing, several courts have agreed, that only e-mails awaiting opening by the intended recipient are within this definition. In re DoubleClick, Inc. Privacy Litig., 154 F.Supp.2d 497, 511-12 (S.D.N.Y. 2001) (explaining that "temporary, intermediate storage" describes an email "being held by a third-party Internet service provider until it is requested to be read"); U.S. v. Weaver, 636 F.Supp.2d 769, 771

(C.D.Ill. 2009) (concluding that emails that have been opened "are not in temporary, intermediate storage incidental to electronic transmission"); Hilderman v. Enea TekSci, Inc., 551 F.Supp.2d 1183, 12205 (S.D.Cal. 2008)(stating "courts have construed subsection (A) as applying to e-mail messages stored on an ISP's server pending delivery to the recipient, but not e-mail messages remaining on an ISP's server after delivery."); Jennings v. Jennings, 401, 401 S.C. 1, 736 S.E.2d 242, 245 (2012)(Electronic mails which an intended recipient has opened may, when not deleted, be "stored," in common parlance. But in light of the restriction of "storage" in § 2510(17(B) solely for "backup protection," e-mails which the intended recipient has opened, but not deleted (and thus which remain available for later re-opening) are not being kept "for the purposes of backup protection").

In addition, versions of already-read emails that are left on a service provider's server are not being stored for backup protection. Weaver, 636 F.Supp.2d at 771-73 (C.D. Ill. 2009) (rejecting argument that opened emails on a service provider's server are covered by the SCA); Bansal v. Russ, 513 F.Supp.2d 264, 276 (E.D. Pa. 2007) (holding that accessing opened e-mail did not violate the SCA).

Neumentum does not even allege in its Complaint that the electronic emails JTM allegedly accessed had not been previously read by the recipient. Thus, when applying the above legal precedent to the facts as alleged in the Complaint, Neumentum's SCA cause of action is further subject to dismissal for failure to state a claim because the emails JTM allegedly accessed do not constitute communications in electronic storage.

## POINT III

### IF NEUMENTUM'S SCA CLAIM IS DISMISSED, THIS COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER ITS STATE LAW CAUSES OF ACTIONS PURSUANT TO 28 U.S.C. § 1367(C)

It is respectfully requested that if Neumentum's SCA cause of action is dismissed, which it should be for the reasons addressed in Point II, supra, this Court should decline to exercise supplemental jurisdiction over Neumentum's remaining state law claims in favor of JTM's action filed in the Superior Court of New Jersey, Morris County, Law Division, McGurrin v. Neumentum, Inc. and Joseph V. Pergolizzi, Docket No. MRS-L-001052.

Pursuant to 28 U.S.C. § 1367(c)(3), "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." Hedges v. Musco, 204 F.3d 109, 123 (3d Cir. 2000) (quoting Borough of West Mifflin v. Lancaster, 45 F.3d 760, 788 (3d Cir. 1995)). As Neumentum has the right to file its claims as counterclaims in the State Court Action and those claims, which all involve New Jersey State law, are better suited for the New Jersey Superior Court to preside over, there exists no basis for this Court to refuse to dismiss Neumentum's additional claims.

**POINT IV**

**NEUMENTUM'S CASE IS SUBJECT TO
REMAND PURSUANT TO 28 U.S.C.A. § 1447(C)**

Upon a determination that a federal court lacks subject-matter jurisdiction over a particular action, the plain language of 28 U.S.C. § 1447(c) mandates that the matter be remanded to the appropriate state court. Bromwell v. Michigan Mutual Insurance Company, 115 F.3d 208, 213 3rd Cir. 1997) citing 28 U.S.C. § 1447(c). Section 1447(c) states: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." Id. (quoting 28 U.S.C. § 1447(c)). The language of this section is mandatory—once the federal court determines that it lacks jurisdiction, it must remand the case to the appropriate state court. International Primate Protection League v. Administrators of Tulane Educ. Fund, 500 U.S. 72, 87 (1991).

In the instant case, if Neumentum's SCA cause of action is dismissed, which it should be for the reasons addressed above, and this Court decides not to exercise supplemental jurisdiction, it is respectfully requested that Neumentum's Complaint with remaining state law causes of actions be remanded to the Superior Court of New Jersey, Morris County and consolidated with McGurrin v. Neumentum, Inc. and Joseph V. Pergolizzi, Docket No. MRS-L-001052.

## **CONCLUSION**

In light of the foregoing, Defendant J. Taggart McGurrin respectfully requests that an Order be entered: (1) dismissing with prejudice Plaintiff Neumentum Inc.'s Stored Communications Act cause of action, 18 U.S.C. § 2701 et. seq. ("SCA"), for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"); (2) dismissing the remaining New Jersey State Law claims alleged in the Complaint pursuant to 28 U.S.C. § 1367(c) for lack of subject matter jurisdiction; and/or (3) remanding the case pursuant to 28 U.S.C.A § 1447(c) to the State Court Action filed by JTM in the Superior Court of New Jersey, Morris County, Law Division, case McGurrin v. Neumentum, Inc. and Joseph V. Pergolizzi, Docket No. MRS-L-001052.

Date: June 26, 2024

Respectfully submitted,

AARON C. SCHLESINGER, ESQ.
KEVIN J. O'CONNOR
**PECKAR & ABRAMSON, P.C.**
Attorneys for Defendant
J. Taggart McGurrin
70 Grand Avenue
River Edge, New Jersey 07661
(201) 343-3434